## CIRCUIT COURT OF LOUDOUN COUNTY

Edna B. Timchak et al.

v.

Ogden Allied
Services Corp. et al.

April 26, 1991

Case No. (Law) 11748

By JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Demurrer of Ogden Allied Services Corporation ("Ogden Allied") to the Amended Motion for Judgment and the Motions of the three defendants for sanctions. The Court heard argument thereon on April 5, 1991.

### Demurrer of Ogden Allied

Simply stated, Count I purports to state a cause of action for conversion of the plaintiffs' property by the individual defendants while acting within the scope of their employment by Ogden Allied. It seeks to hold Ogden Allied liable for the conversion solely under the doctrine of respondeat superior. There are no allegations that Ogden Allied participated in the conversion.

An employer will be liable for an employee's act if the act was within the scope of the duties of employment and in execution of the service for which the employee was engaged. *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 306 (1948). Ogden Allied argues that the plaintiffs have not alleged facts to show that the conversion (theft) was within the scope of employment. *Tri-State Coach Corp.*, 188 Va. at 307, provides a test for determining if an act falls within the scope of employment, as follows:

> But, in general terms, it may be said that an act is within the scope of the employment if (1) it be something fairly and naturally incident to the business, and (2) if it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

In *Alvey v. Butchkavitz*, 196 Va. 447, 454 (1954), the Virginia Supreme Court stated:

> Thus we subscribe to the holding that if the deviation from the master's business is slight on the one hand, or marked and unusual on the other, the issue is for the court to decide; whereas, if the facts in the particular case place the question between two extremes, the question becomes a factual issue for the jury.

After consideration of the allegations of Count I, I am of the opinion that they fall between the two extremes, and, therefore, is a question for the jury. Accordingly, the demurrer is overruled on this ground.

Ogden Allied also demurs to Count I on the ground that it fails to allege facts that would support a claim for punitive damages against it. The plaintiffs allege

that Ogden Allied ratified the tortious conduct of the individual defendants by failing to take disciplinary action against them as a result of their alleged actions causing the loss of the plaintiff's property, failing to disavow their conduct, and by silence or inaction.

While an employee himself may be liable for punitive damages because his conduct is malicious or so willful or wanton to evince a conscious disregard of the rights of others, his employer is not also liable for punitive damages unless the conduct was authorized or subsequently ratified by the employer. *See*, 5C M.J., *Damages*, § 71, footnote 14, and the cases cited therein.

There are no allegations that Ogden Allied authorized or participated in the acts of the individual defendants. The facts alleging subsequent ratification all concern the failure of Ogden Allied to act. The failure of the principal to discharge an agent before trial is not a ratification of his acts. *Southern Railway Co. v. Grubbs*, 115 Va. 876, 881 (1914) (failure of railroad company to discharge conductor accused of assault). A review of the cases cited in above-referenced footnote in *Michie's Jurisprudence* clearly indicate that there must be an express ratification in the form of affirmative acts by the employer of the employee's acts. *E.g., see, Tri-State Coach Corp.*, 188 Va. at 309, where the Court stated: "There is no evidence or claim that Tri-State *expressly* authorized or ratified this tort." (Emphasis mine.)

The cases cited by the plaintiffs involving an employee's fraud are not applicable because a different rule applies in such cases. *See, Dudley v. Estate Life*.

Count I alleges no facts to support an express ratification by Ogden Allied. Therefore, the Demurrer is sustained on this ground.

In Count II, the plaintiffs allege that the defendants' negligence and/or gross negligence caused the loss of the plaintiffs' property. At argument on April 5, 1991, counsel for Ogden Allied withdrew its demurrer to Count II except as it relates to the request for an award of punitive damages.

Punitive damages are warranted not only by malicious conduct, but also by negligence which is so willful or wanton as to evince a conscious disregard of the rights

of others. *Infant C. v. Boy Scouts of America*, 239 Va. 572, 580 (1990); *Booth v. Robertson*, 236 Va. 269, 273 (1988).

Count II does not allege facts which show that Ogden Allied either participated in the wrongful conduct, authorized it or expressly ratified it. The allegations do not rise to the level of malicious or willful or wanton conduct by Ogden Allied. It cannot be liable for punitive damages merely because its employees' conduct was malicious or willful or wanton. The Demurrer is sustained on this ground.

Ogden Allied demurs to Count III as failing to state a cause of action against it. Count III alleges that Ogden Allied was negligent or grossly negligent because it hired the individual defendants as juveniles, did not provide them with adequate training, hired them in a perfunctory manner, and did not provide more experienced employees to help the individual defendants with the plaintiffs who needed wheelchair assistance because of their age and physical disabilities.

I am of the opinion that Count III does not allege a separate and distinct cause of action against Ogden Allied because nothing is alleged to show that such acts caused any loss to the plaintiffs. As the facts are alleged in Count III, the plaintiffs could not have suffered the loss absent the conduct of the individual defendants. If the individual defendants' conduct is tortious, then Ogden Allied is liable under the doctrine of respondeat superior if they were acting within their scope of employment and in furtherance of its business. If the individual defendants' conduct is not tortious, then there is no way under the facts alleged that Ogden Allied can be liable for the plaintiffs' loss.

The Demurrer is sustained on this ground.

For the reasons stated [above], the Demurrer is likewise sustained as to the request in Count III for punitive damages.

### Defendants' Motions for Sanctions

While I do not condone or approve of Mr. Hirsch's tactics on March 6, 1991, at the deposition of Mr. Hannon as set forth in the motions, and while I would not allow such tactics during a trial before me, I have reluctantly

come to the conclusion that I cannot grant the defendants' motions under § 8.01-271.1 or the general supervisory powers of this Court.

Mr. Hirsch's actions do not fall within the ambit of § 8.01-271.1 because it did not involve a "pleading, motion or other paper." It merely involved the questioning of a witness at his deposition. It did not occur in the presence of the Court.

I know of no authority for expunging a deposition; however, under Rule 4:1(c), this Court can make an order to protect a party from embarrassment and oppression. The order can direct that a deposition be sealed. *See, Shenandoah Publishing v. Fanning*, 235 Va. 253, 261 (1988). Here, Mr. Hirsch knowingly read into a deposition a statement he fabricated which implicates Mr. Hannon and Mr. Ostrander in a crime. He did so knowing full well that the statement did not exist. Clearly, the statement purports to be a statement given under interrogation to a law enforcement officer. The existence of the deposition could cause embarrassment or oppression to the individual defendants, especially if it were read without knowledge of the subsequent proceedings in the case.

The Court directs that the deposition of Mr. Hannon taken on March 6, 1991, be sealed and not opened except by order of this Court.

Although I am sympathetic with the defendants for having to file a request for production of a document that Mr. Hirsch knew all along not to exist, I know of no authority for an award of fees to the defendants for having to make the request.